## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AHMAD WILLIAMS, MALAIKA WILLIAMS** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  25-3541** |
| | : | |
| **THUMBTACK, INC., A-G EAGLE CONSTRUCTION LLC** | : | |
| | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                    **January 28, 2026**

Although the docket in this case appears more complicated, this should be a straightforward dispute about a roof repair gone awry.  Plaintiff Ahmad Williams alleges that he hired A-G Eagle Construction, LLC through an intermediary company called Thumbtack, Inc. to repair his roof and that A-G Eagle performed poorly, harming him financially and emotionally. Proceeding pro se, Mr. Williams now brings statutory, contract, and tort claims against both Thumbtack and A-G Eagle.  A-G Eagle moved to dismiss Mr. Williams's complaint under Federal Rule of Civil Procedure 12(b)(6).  Meanwhile, Mr. Williams moved to amend his complaint, adding his wife Malaika as a co-plaintiff and a loss of consortium claim.  We grant Mr. Williams's motion to amend and allow several of his and his wife's claims into discovery. There is much that remains unclear about what happened to plaintiffs' roof.  But Mr. and Mrs. Williams allege several plausible causes of action, so we shall proceed.

## I.    Background

According to the allegations, which we must accept for these purposes, plaintiff Ahmad Williams owns Kingson Enterprise, LLC (Kingson), a Pennsylvania based company.  DI 46-1 at ¶ 4.  Kingson purchased a property which functions as both a residence for Mr. Williams and his wife Malaika Williams, and as a rental property for tenants.  *Id.* at ¶ 5.  Around July 2023, Mr.

and Mrs. Williams realized that the roof over the rear bedroom of the property needed repair, and so Mr. Williams entrusted his wife with finding a contractor.[1]  *Id.* at ¶ 8.

Mrs. Williams used the services-marketplace platform Thumbtack, Inc. (Thumbtack) to hire A-G Eagle Construction, LLC (A-G Eagle) for the job.  A-G Eagle performed the roof repair around August 2023.  *Id.* at ¶ 9.  After the work was completed, A-G Eagle provided Mrs. Williams with a handwritten copy of a receipt that included the contract terms for the warranty and the company's insurance information.  However, the receipt lacked an official company letterhead, business logo, company address, company license information, and signature from an authorized representative, and so Mrs. Williams requested an official copy.  *Id.* at ¶ 10.  A-G Eagle never provided such a document.  *Id.*

Around August 2024, the roof collapsed.  *Id.* at ¶ 11.  Furniture was destroyed, the hardwood floor was warped, and electronics were damaged.  *Id.* at ¶ 12.  A tenant at the property canceled her stay, and the damage to the roof caused a surge in utility bills as the Williams were forced to run dehumidifiers and fans.  *Id.* at ¶¶ 12-13.  Mr. and Mrs. Williams contacted A-G Eagle multiple times to repair the roof, however A-G Eagle never returned to the property.  *Id.* at ¶ 15; *see also* DI 45-2 at 4 (ECF).

A subsequent inspection by an independent roofing contractor revealed significant deterioration of the roof since A-G Eagle's work.  DI 46-1 at ¶ 14.  The contractor advised that the affected section of the roof could no longer be repaired and that the entire roof should be replaced.  *Id.*  Since this incident, Mr. and Mrs. Williams have found the property difficult to live in and rent out to prospective tenants. *Id.* at ¶¶ 17-18.  The financial fallout from this incident has

---

[1] Mr. Williams was incarcerated at this time.  DI 46-1 at ¶ 8.

also caused Mr. Williams to have anxiety, insomnia, persistent headaches, nausea, loss of continence, light sensitivity, eye pain stemming from headaches, and gastrointestinal issues. *Id.* at ¶ 19. Mrs. Williams meanwhile has suffered her own emotional distress from seeing her husband in a diminished state: she has developed high blood pressure, headaches, chest pain, low energy, panic attacks, and a resurgence of Graves' disease. *Id.* at ¶ 68.

On July 10, 2025 Mr. Williams filed suit against A-G Eagle and Thumbtack. DI 1. Thumbtack subsequently filed a motion to compel arbitration (*see* DI 12), which was denied without prejudice by the Honorable Mark Kearney.[2] DI 20. Thumbtack then appealed this denial to the Third Circuit, and we stayed all matters pertaining to Thumbtack during the pendency of its appeal. DI 35.

A-G Eagle meanwhile filed a motion to dismiss Mr. Williams's complaint. DI 14. Following this motion, Mr. Williams sought leave to amend his complaint to add additional facts, a loss of consortium claim, and include his wife as a plaintiff. DI 45.[3] Ultimately, plaintiffs' amended complaint lists many causes of action, which we group into three categories:

1. Statutory claims:

    a. Breach of the Magnuson-Moss Warranty Act

    b. Breach of the Pennsylvania Commercial Code

    c. Breach of the Pennsylvania Unfair Trade Practices and Consumer Protection

---

[2] The case was reassigned to us on September 9, 2025. *See* DI 24.

[3] A day after moving to amend, Mr. Williams moved for leave to substitute the correct version of his amended complaint, as he had inadvertently attached an incomplete draft. DI 46 at ¶ 2. We grant Mr. Williams's motion and treat Mr. Williams's substitute exhibit as his amended complaint. *See* DI 46-1.

Law

2.  Contract-based claims:

    a.  Breach of contract

    b.  Unjust enrichment

3.  Tort claims:

    a.  Negligence[4]

    b.  Fraudulent misrepresentation

    c.  Negligent misrepresentation

    d.  Negligent infliction of emotional distress

    e.  Loss of consortium

*See* 46-1 at ¶ 3.

A-G Eagle opposes Mr. Williams's motion to amend.  *See* DI 48.  For expediency, we evaluate both Mr. Williams's motion to amend his complaint and A-G Eagle's motion to dismiss.

## II.    Mr. Williams's motion to amend is granted

Under Rule 15(a) of the Federal Rules of Civil Procedure, we are required to grant Mr. Williams leave to amend his pleading "when justice so requires."  Fed. R. Civ. P. 15(a).  This is a liberal standard as "the Federal Rules reject the approach that pleading is a game of skill in

---

[4] Mr. and Mrs. Williams bring causes of action for negligence and negligence per se, but under Pennsylvania law, "negligence per se" is often "subsumed by the negligence claim." *Weinberg v. Legion Athletics, Inc.*, 683 F. Supp. 3d 438, 452 (E.D. Pa. 2023); *see also Cabiroy v. Scipione*, 767 A.2d 1078, 1082 (Pa. Super. 2001) ("The doctrine of per se liability does not create an independent basis of tort liability but rather establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort.") (citation modified).  Therefore, we will dismiss plaintiffs' negligence per se claim but allow them to pursue a negligence per se theory as part of their negligence claim. *Weinberg*, 683 F. Supp. 3d at 452.

which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (citation modified); *see also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings should be liberally granted."); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 212 (3d Cir. 2006) ("Unquestionably, we must construe the Federal Rules of Civil Procedure liberally to allow parties their day in court.").

A-G Eagle argues that we should deny Mr. Williams's motion to amend because his proposed amendment is futile, prejudicial, dilatory, and in bad faith. DI 48 at 3 (ECF). However, A-G Eagle did not persuade us that these factors are present here. Starting with futility, an amendment is futile where the complaint, as amended, fails to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). As we explain in greater detail below, plaintiffs' amended complaint adequately pleads several causes of action and thus is not futile.

Moving onto prejudice, A-G Eagle argues that it will be prejudiced with unnecessary additional motion practice for claims addressed in the amended complaint. But the very fact that a party must file additional motions does not necessarily constitute prejudice. Rather, in evaluating prejudice we must assess the overall "hardship to the defendants . . . [specifically] whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Here, Mr. Williams only seeks to add one new party (his wife) and one additional cause of action (loss of consortium). Furthermore, the new details in Mr. Williams's amended complaint arise out of the same core facts as his original pleading — a defective roof

repair — and thus his new pleading will not make discovery and trial preparation significantly more burdensome for A-G Eagle.[5]  Thus, A-G Eagle did not demonstrate prejudice.

Finally, A-G Eagle argues that Mr. Williams's amended complaint is dilatory and in bad faith because Mr. Williams (1) could have included his wife as a plaintiff in his original complaint (2) contradicts his earlier complaint by now asserting that A-G Eagle advertised to his wife rather than him and (3) cites some case law that has been overruled.  While we agree that Mr. Williams could have presented his allegations more clearly from the start, A-G Eagle did not demonstrate that Mr. Williams acted in bad faith.  We are particularly cognizant of the fact that Mr. Williams is filing pro se, and "inadvertence does not equal bad faith."  *Wilson*, 393 F.3d at 401; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation modified).  Furthermore, Mr. Williams has only moved to amend his complaint once, and he states that he moved to amend in response to A-G Eagle's motion to dismiss.  *See* DI 49 at ¶ 3.  We take Mr. Williams at his word this time and grant him leave to amend.

### III.    A-G Eagle's motion to dismiss is granted in part and denied in part[6]

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[5] We note that A-G Eagle admits in their opposition brief that "Plaintiff's proposed amended complaint does not substantively change the nature of the claims made in the Complaint."  *See* DI 48 at 5 (ECF).

[6] Because we grant Mr. Williams's motion to amend, we evaluate the factual assertions from his amended complaint (*see* DI 46-1) against A-G Eagle's motion to dismiss (*see* DI 14).

570 (2007).  A claim is facially plausible when the plaintiff pleads facts allowing the court to reasonably infer that the defendant is liable for the alleged misconduct.  Mere legal conclusions or threadbare recitals of the elements of a cause of action will not suffice.  *Twombly*, 550 U.S. at 555.

We construe pro se complaints liberally, but a complaint must still plead specific facts that support a plausible claim.  *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) ("[A] litigant is not absolved from complying with Twombly and the federal pleading requirements merely because s/he proceeds pro se.").  A pro se plaintiff may seek leave to amend unless we decide that amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### A. Plaintiffs' statutory causes of action are dismissed except for their claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law

#### a.  Plaintiffs' cause of action under the Magnuson-Moss Warranty Act is dismissed

The Magnuson-Moss Warranty Act (MMWA) is a federal remedial statute that protects purchasers of consumer goods from deceptive warranty practices.  *See* 15 U.S.C. §§ 2301 *et seq.*; *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 630 (7th Cir. 2001).  Here, A-G Eagle argues that the MMWA does not apply to the facts of this case, and we agree.

The MMWA provides a cause of action for "*a consumer* who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1) (2003) (emphasis added).  The law defines a "consumer" as (1) "a buyer (other than for purposes of resale) of any consumer product"; (2) "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product";

and (3) "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3).  Thus, to sue under this statute, plaintiffs need to have purchased (or have some type of legal relationship with) a consumer product.  *See Garbutt v. Murray's Freightliner*, No. 21-CV-628, 2021 WL 3513858, at *3 (W.D. Pa. Aug. 10, 2021) ("The MMWA only applies to claims involving consumer products.") (citation modified)*; Bennett v. CMH Homes, Inc.,* 770 F.3d 511, 512 (6th Cir. 2014) ("The Act limits its protections to 'consumer products.'"); *Shonk v. Fountain Power Boats*, 338 F. App'x 282, 287 (4th Cir. 2009) (affirming the district court's dismissal of claims under the MMWA "because the Initial Complaint failed to identify a consumer product").

The MMWA defines a "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)."  15 U.S.C. § 2301(1).  Furthermore, the Federal Trade Commission (FTC) promulgated regulations for the MMWA which specify that building materials are consumer products when sold "in connection with the improvement, repair, or modification of a home" but are not consumer products when they "are at the time of sale integrated into the structure of a dwelling . . . as they cannot be practically distinguished from realty." 16 C.F.R. § 700.1(e); *Mikola v. Penn Lyon Homes, Inc.,* No. 4:CV-07-0612, 2008 WL 2357688, at *8 (M.D. Pa. June 4, 2008).[7]

---

[7] The FTC regulations further explain that "In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or

8

Here, plaintiffs characterize the product they purchased from A-G Eagle as a "roof replacement" or alternatively as a "finished roof." *See* DI 46-1 at ¶ 38. A roof replacement is not "tangible personal property which is distributed in commerce", and even if we assume that plaintiffs' purchased the roof's building materials, they did not purchase these materials independently, but rather A-G Eagle integrated them into the structure of the dwelling. Thus, plaintiffs did not purchase a consumer product. *See Miller v. Herman*, 600 F.3d 726, 737 (7th Cir. 2010) (finding that windows are not consumer products when purchased in connection with the construction of a home); *Kaiser Martin Grp., Inc. v. Haas Door Co.,* No. CV 19-1823, 2019 WL 2774192, at *6 n.10 (E.D. Pa. July 2, 2019) (holding that garage doors installed as part of a horse-riding arena did not meet the definition of consumer products). Therefore, plaintiffs' claims under the MMWA are dismissed.

### b. Plaintiffs' cause of action under the Pennsylvania Commercial Code is dismissed

Pennsylvania's Commercial Code — codified under 13 Pa. C.S. §§ 1101 *et seq.* — creates express and implied warranties between buyers and sellers that arise under certain conditions. *See* §§ 2313-2315; *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 840 (Pa. Super. 1999). A-G Eagle argues — similarly to with the MMWA— that plaintiffs' claims lie outside the protections of this code, and we concur.

§ 2102 of the code "restricts the scope and applicability . . . to cases involving 'transactions in *goods.*'" *Whitmer v. Bell Tel. Co. of Pennsylvania*, 522 A.2d 584, 587 (Pa. Super. 1987). Goods are defined as "all things . . . which are movable at the time of

---

an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials." 16 C.F.R. § 700.1(f).

identification to the contract for sale . . . and things in action." § 2105. Therefore, "in order to be a 'transaction in goods,' the subject matter of the transaction—the putative good—must be tangible and movable." *Whitmer* 522 A.2d at 587. Furthermore, "[w]hen the transaction involves predominantly the rendition of services, the fact that tangible movable goods may be involved in the performance of services does not bring the contract under the Code." *Id.*

Here, as discussed in reference to the MMWA, plaintiffs characterize the operative transaction as a "roof replacement." DI 46-1 at ¶ 38. The act of having a roof replaced is a service rather than a good, and any equipment used by A-G Eagle (such as building materials) to complete this transaction was incidental to the service. *See Kaplan v. Cablevision of PA, Inc.,* 671 A.2d 716, 724 (Pa. Super. 1996) ("The dominant purpose of the Subscription Agreement is to provide a cable television programming service; any equipment supplied by the Cable Companies to transmit the signals into the subscriber's home is incidental to the service."). Plaintiffs even define the transaction as a service in their amended complaint writing, "Defendant [A-G Eagle] . . . promoted provided, and facilitated the defective *service*." DI 46-1 at ¶ 26. (emphasis added); *see also Crestwood Membranes, Inc. v. Constant Servs., Inc*., No. 3:15-CV-537, 2017 WL 1088089, at *7 (M.D. Pa. Mar. 22, 2017) ("i2M has not directed this Court to a single fact in the record from which this Court could infer that its contracts with CSI were for 'goods' and not for printing services."). Therefore, plaintiffs' claims under the Pennsylvania Commercial Code are dismissed.

   c. **Plaintiffs' cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law survives**

The Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) is a remedial statute aimed at protecting consumers in the marketplace. *See Com., by Creamer v.*

*Monumental Props., Inc.*, 329 A.2d 812, 816-17 (Pa. 1974).  The act specifically codifies "a list

of practices designated as 'unfair and deceptive' and therefore 'unlawful' (73 P.S. §§ 201–2,

201–3) . . . and authoriz[es] a private cause of action by private parties for treble damages in

certain circumstances (73 P.S. § 201–9.2)."  *Valley Forge Towers S. Condo. v. Ron-Ike Foam*

*Insulators, Inc.,* 574 A.2d 641, 644 (Pa. Super. 1990).  The private right of action reads:

> Any person who purchases or leases goods or services primarily for personal,
> family or household purposes and thereby suffers any ascertainable loss of money
> or property, real or person, as a result of the use or employment by any person of a
> method, act or practice declared unlawful by section 3 of this act, may bring a
> private action to recover actual damages or one hundred dollars ($100), whichever
> is greater.

73 P.S. § 201–9.2.  Here, A-G Eagle argues that plaintiffs' claims under this statute fail because

they did not purchase their roof repair "primarily for personal, family, or household purposes,"

but rather for their commercial investment property Kingson.  However, we reject A-G Eagle's

argument at this early stage of the litigation.

The leading case interpreting the primary purpose restriction in the UTPCPL is *Valley*

*Forge*, 574 A.2d at 647-49.  In that case, a residential condominium association brought a cause

of action under the UTPCPL against a roofing membrane manufacturer for supplying defective

roofing material.  *Id.* at 642-43.  The trial court granted the manufacturer's motion to dismiss,

reasoning that because the association was in the business of managing the condominium

building, it had purchased the roofing membrane for that business purpose.  *Id.* at 647.  However,

the Superior Court reversed. The Court explained that "[w]hen a roof is purchased to cover a

*residential* unit, whether it is the first roof or a replacement roof, the roof is being purchased

'primarily for a personal, family, or household use,' *i.e.* as a necessary part of a personal, family,

or household residence."  *Id.* at 648.  Furthermore, the court wrote that "[w]hile the record

reveals that some of the units in the building were used for *business* purposes, neither the number

of such units, nor the square footage involved, would provide a basis to conclude at this nascent

stage in the proceedings that *business* rather than *residential* use predominated." *Id.* at 649.

Thus, the Court denied the manufacturer's motion to dismiss. *Id.*

Similarly here, plaintiffs' allege that their roof repair was for a property that included

both "residential rental housing for prospective tenants" as well as "a place for personal

residence." DI 46-1 at ¶ 5. Thus, plaintiffs purchased the roof "primarily for personal, family, or

household use," *i.e.* as a necessary part of personal residences. Plaintiffs also admit that the

"[t]he lower level of the property was designated and fitted for business use." *Id.* But drawing

all reasonable inferences in plaintiffs' favor, there is no basis to conclude at this time that a

business rather than residential use predominated at the property. *See also Elansari v. Best Buy,*

*LP*, No. 627 EDA 2019, 2019 WL 5300194, at *8 (Pa. Super. Oct. 18, 2019) ("Where the facts

are in dispute, a plaintiff must prove that his main (not exclusive) use for the good or service was

personal, familial, or household in nature, by a preponderance of the evidence."). Therefore, we

will not dismiss plaintiffs' claim under the UTPCPL on this ground. [8]

---

[8] We note that in *Valley Forge*, the condominium association acted in a representative
capacity on behalf of its unit owners, and thus "the *representee's residential use,* rather than the
condominium association's putative business purpose of managing the condominium building,
was the relevant purpose in applying the primary purpose restriction." *Valley Forge*, 574 A.2d at
648. Here in contrast, plaintiffs do not plead that they were acting in a representative capacity
for their tenants. Still, the fact that plaintiffs' property functioned as their personal residence is
enough to clear the primary purpose restriction at this early stage of the litigation.

We additionally note that plaintiffs' complaint leaves unclear whether they or Kingson
actually purchased A-G Eagle's services. This distinction is important because "[t]he UTPCPL
contemplates as a protected class 'only those who purchase goods or services, not those who may
receive a benefit from the purchase.'" *Car Sense, Inc. v. Am. Special Risk, LLC*, 56 F. Supp. 3d

**B. Plaintiffs' contractual causes of action will proceed into discovery**

    **a. Plaintiffs' breach of contract claim survives**

A plaintiff asserting a breach of contract claim must plead (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). Here, A-G Eagle argues that plaintiffs fail to adequately plead the existence of a contract. But while plaintiffs do not write with precision, they present sufficient facts — when viewed in the light most favorable to them — that they formed an agreement with A-G Eagle. For example, plaintiffs write that, "After the work was completed, [A-G Eagle] provided Plaintiff M.W. with a handwritten copy of a receipt that included the purported contract terms for the warranty." DI 46-1 at ¶ 10. Plaintiffs further plead that "[a] binding agreement was formed between [A-G Eagle] and Plaintiffs when they confirmed the work order through the Thumbtack platform and the parties agreed on the scope of the work and payment" and that "Defendant [A-G Eagle's] contract expressly represented that the roof repair was covered by a two-year warranty, during which the company would address and repair any leaks at no additional cost to the customer." *Id.* at ¶¶ 32, 44. When taken together, these facts plausibly allege the existence of a contract.[9]

---

686, 697 (E.D. Pa. 2014) (quoting *Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir.1994)). Therefore, plaintiffs likely cannot sue under this statute if they did not directly purchase A-G Eagle's services. However, A-G Eagle does not raise this issue in their motion to dismiss and so we will not rule on it today.

    [9] We note — similarly to Mr. Williams's claim under the UTPCPL — that it is unclear whether A-G Eagle formed this alleged contract with plaintiffs or with Kingson. This is important because "[g]enerally, to bring a claim for breach of contract, the plaintiff must be a party to the agreement." *Republic Servs. of Pa., LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 476 (E.D. Pa. 2018) (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991)). We decline to address this issue now however without the benefit of a full

### b.  Plaintiffs' unjust enrichment claim survives

Unjust enrichment is an equitable doctrine recognized in Pennsylvania where "the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).  A-G Eagle argues that plaintiffs cannot bring this claim because their complaint alleges that the parties formed a contract.  *See Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract."). However, "unjust enrichment may be pled in the alternative to a breach of contract claim if the contract at issue covers only a part of the relationship between the parties or if the existence of a contract is uncertain or its validity is disputed by the parties."  *Brand Design Co., Inc. v. Rite Aid Corp.*, 623 F. Supp. 3d 526, 538 (E.D. Pa. 2022) (citation modified); *see also I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko",* 500 F. Supp. 3d 380, 421-22 (E.D. Pa. 2020); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").  Here, pending discovery and further briefing, there is uncertainty as to the existence and scope of the parties' contractual relationship, and thus plaintiffs' unjust enrichment claim can proceed.[10]

### C.  Plaintiffs' tortious causes of action in negligence and loss of consortium will proceed

---

record and because A-G Eagle has not raised this issue.

[10] While plaintiffs may maintain actions for unjust enrichment and breach of contract at the pleading stage, they will not be able to recover on both theories.  *See Cornell Companies*, 512 F. Supp. 2d 238, 266 n.18 (E.D. Pa. 2007); *Robinson v. Holiday Universal, Inc.*, No. 05–5726, 2006 WL 2642323, at *8 (E.D. Pa. Sept. 11, 2006).

into discovery.  Their claims of fraudulent and negligent misrepresentation and negligent infliction of emotional distress are dismissed.

### a.   Plaintiffs' negligence claim survives

To establish negligence under Pennsylvania law, a plaintiff must prove four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.  *Est. of Swift v. Ne. Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997).  Here, plaintiffs allege that A-G Eagle "had a clear duty to provide a conforming and reliable service" and that A-G Eagle "failed to meet the standard" as they "performed the roof installation and repair incompetently, using patchwork that initially concealed the poor workmanship."  DI 46-1 ¶¶ 20, 51.  Plaintiffs further allege that A-G Eagle's work caused property damage including "visible rot and structural damages that left [the roof] in worse condition than the initial repair" and that this "financial fallout" has taken a "personal toll" on Mr. Williams.  *Id.* at ¶¶ 14, 19. While these facts are somewhat bareboned, they are of sufficient caliber to make out a plausible claim for negligence. [11]

### b. Plaintiffs' fraudulent and negligent misrepresentation claims are dismissed

---

[11] We note that plaintiffs' negligence claim could be barred by the gist of the action doctrine, which "prevents a purely contractual duty from serving as the basis for a tort claim." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 216 (3d Cir. 2022) (citation modified). Specifically, "if the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract . . . If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Bruno v. Erie Ins. Co.,* 106 A.3d 48, 68 (Pa. 2014).  Here, plaintiffs allege that A-G Eagle's duty arose from "express and implied warranty," thus suggesting that any potential breach arose out of a contractual agreement between the parties.  *See* DI 46-1 at ¶ 51.  However, we decline to rule on this issue today without the benefit of a full record and because A-G Eagle has not raised this issue.

To plead fraudulent misrepresentation under Pennsylvania law, a plaintiff must allege: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). In slight contrast, to plead negligent misrepresentation, a plaintiff must allege (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Id.* at 890. Thus, fraudulent and negligent misrepresentation differ in that "to commit [negligent misrepresentation], the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words." *Id.*

Here, A-G Eagle argues that plaintiffs have failed to adequately plead both fraudulent and negligent misrepresentation, and we agree. Because plaintiffs are asserting claims based in fraud, they must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[12] Plaintiffs can satisfy this requirement by "pleading the date, place or time of

---

[12] We note that there is a disagreement among district courts in this Circuit whether Rule 9(b) applies to negligent misrepresentation claims. *Compare Hanover Ins. Co. v. Ryan*, 619 F.Supp.2d 127, 142 (E.D. Pa. 2007) (finding that the "particularity requirement of Rule 9(b) applies to claims of negligent misrepresentation") *with McLaughlin v. Bayer Corp.,* 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016) (holding plaintiffs' negligent misrepresentation claim to the normal 12(b)(6) standard) *with Floyd v. Brown & Williamson Tobacco Corp.,* 159 F. Supp. 2d 823, 834

the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud . . . Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir. 2004) (citation modified); *see also Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 369 (E.D. Pa. 1996) ("Plaintiff may not simply point to a bad result and allege fraud. Rather, plaintiff must inject precision and some measure of substantiation into the allegations of fraud .... who, what, when, where, and how: the first paragraph of a newspaper story would satisfy the particularity requirements.") (citation modified).

Plaintiffs did not plead their misrepresentation claims with sufficient specificity. Plaintiffs write that A-G Eagle "fraudulently, intentionally, and/or negligently misrepresented its workmanship and professionalism, both before and after the so-called 'repair,' particularly as it pertains to honoring the warranty" and that the company "promot[ed] the service as having characteristics they did not possess during and after the purchase." DI 46-1 ¶¶ 21, 53. But plaintiffs omit the date when these misrepresentations occurred, which A-G Eagle personnel made these false statements to them, the specific content of the false statements, or otherwise inject precision into their allegations to place A-G Eagle on notice of the charged misconduct. *See Travelers Indem. Co. v. Cephalon, Inc.,* 620 F. App'x 82, 86 (3d Cir. 2015) ("Plaintiffs fail to identify any specific fraudulent statements, omissions, or misrepresentations . . . [thus] their claims sounding in fraud cannot stand."); *Yakubov v. GEICO Gen. Ins. Co.*, No. CIV.A. 11-3082, 2011 WL 5075080, at *3 (E.D. Pa. Oct. 24, 2011) ("Plaintiff does not allege with specificity who

(E.D. Pa. 2001) (taking a middle ground and requiring plaintiffs to plead their negligent misrepresentation claim with "a degree of specificity"). We need not take sides in this dispute, as plaintiffs do not meet even the more lax 12(b)(6) standard here.

made the statements, when or where the statements were made, what the statements were, or even how the statements were communicated."); And furthermore, plaintiffs did not provide any details on why they *justifiably* relied on A-G Eagle's misrepresentations. *See Shuker v. Smith & Nephew, PLC,* 885 F.3d 760, 778-79 (3d Cir. 2018) ("It is not enough simply to assert that a statement was fraudulent and that reliance upon it induced some action, the complaint [must] contain details about the relationship of the parties involved and the nature of the transaction. Such details are necessary for a reviewing court to determine, for example, whether a representation's obvious falsity precludes a finding of justifiable reliance.") (citation modified). For these reasons, plaintiffs' misrepresentation claims are dismissed. [13]

### c. Plaintiffs' negligent infliction of emotional distress claim is dismissed

Under Pennsylvania law, claims for negligent infliction of emotional distress (NIED) are restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. *Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 217 (Pa. Super. 2012) (citation modified).

Here, the factual allegations in plaintiffs' complaint do not align with any of these scenarios. Plaintiffs do not allege physical impact, presence in a zone of danger, or witnessing

---

[13] We note that even if plaintiffs manage to plead their fraudulent and negligent misrepresentation claims with greater specificity, these claims would still likely be barred by the gist of the action doctrine because their fraud claims are closely intertwined with their breach of contract claims. *See eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 20 (Pa. Super. Ct. 2002) (holding that fraud claims that relate solely to contractual performance are barred by the gist of the action doctrine). However, we need not decide this issue today.

harm to a close relative.  Nor can they claim they suffered emotional distress from having a

contractual relationship with A-G Eagle: Under Pennsylvania law, this category of claims is

reserved for heightened fiduciary relationships — such as between doctors and patients — whose

breach can cause severe emotional distress.  *Weiley*, 51 A.3d at 217-218; *see also Hershman v.*

*Muhlenberg Coll.,* 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (collecting cases).[14]  An ordinary

business relationship of the type alleged here between plaintiffs and A-G Eagle falls far short of

this standard.  *See De Camara v. Bryn Mawr Coll.*, No. CV 25-2287, 2025 WL 2779338, at *16

(E.D. Pa. Sept. 26, 2025) (declining to recognize an NIED claim by students against their college

because "the relationship between a private college and its students is not the type of

relationship holding the potential of deep emotional harm") (citation modified).  Accordingly,

plaintiffs' NIED claim is dismissed.

### d. Plaintiffs' loss of consortium claim survives

In a loss of consortium claim, a spouse brings a cause of action for deprivation of their

marital privileges and amenities because of their partner's injuries.  *Darr Const. Co. v. W.C.A.B.*

*(Walker)*, 715 A.2d 1075, 1079-80 (Pa. 1998).  Thus, a consortium claim "rises and falls with,

the injured spouse's underlying tort claim." *Bixler v. Lamendola*, No. 3:20-CV-1819, 2022 WL

2441567, at *5 (M.D. Pa. July 5, 2022); *Shuker*, 885 F.3d at 777-78 (3d Cir. 2018).  Here,

---

[14] We note that the Pennsylvania Supreme Court was evenly divided when it considered
the reach of NIED claims based on a breach of contractual or fiduciary duty.  However, even
those justices that supported recognizing NIED claims based on contractual or fiduciary duty
would have held "that NIED is not available in garden-variety breach of contractual or fiduciary
duty cases, but only in those cases where there exists a special relationship where it is
foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a
reasonable person should not be expected to endure the resulting distress." *Toney v. Chester*
*Cnty. Hosp.,* 36 A.3d 83, 84 (Pa. 2011) (citation modified).

because plaintiffs have adequately pled a negligence claim based on Mr. Williams's injuries, their loss of consortium claim focused on Mrs. Williams can also proceed into discovery.

**IV.    Conclusion**

For the reasons stated above, only plaintiffs' claims under the UTPCPL, breach of contract, unjust enrichment, negligence, and loss of consortium survive.  Their remaining claims are dismissed without prejudice.  Plaintiffs have 14 days to make any final amendments to their complaint.  An appropriate order follows.